**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 23-cr-000428 (BAH)** |
| **v.** | |
| **DONOVAN BRAXTON,** | **Detention H'rg:**  December 21, 2023 |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

Over the past two months, Mr. Braxton appears to have committed more than a dozen different crimes, including one involving an explosive device.   He did so while wearing a court-ordered GPS device as he was awaiting trial for the possession of an apparent machine gun. These more recent offenses follow twenty years of Mr. Braxton committing a variety of crimes including theft and assault.   These offenses follow multiple terms of imprisonment and failed period of probation which have done nothing to deter Mr. Braxton from committing additional offenses.   And when Mr. Braxton was arrested in relation to this offense, he was found in possession of another firearm and a quantity of what appears to be a controlled substance.   Mr. Braxton represents a danger to our community and there are no conditions or combination of conditions that can assure the safety of our community were he to be released.

## BACKGROUND

On December 7, 2023, Defendant Braxton was charged by indictment with a single count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).   An initial appearance was held before the Honorable Zia M. Faruqui on December 19, 2023. At that hearing, the Government indicated that it would seek Mr. Braxton's detention pending trial pursuant to 18 U.S.C. §§3142(f)(1)(e) (offense involving a firearm) and d(1)(A)(iii) (probation for a state offense).

### *The Instant Offense*

On March 29, 2023, at 4:45 PM, a man called 911 and asked for police to "respond to the rear of the address of 5026 Sheriff Road NE," Washington, D.C.   The caller reported: "It looks like there's a black SUV that's pulling a trailer.   It looks like it's getting ready to possibly steal a car in the back of that address or possibly the vehicle that's back there may be stolen.   That house . . . there's been a lot of stolen vehicles and it looks suspicious."   The caller reiterated the address but did not provide a call-back number.

MPD Officers Willis and Nava arrived and noticed a black pickup truck (Oregon tag TN04463) blocking the alleyway with a trailer attached to the back.   When they first arrived, the officers observed a man later identified as Donovan Braxton, standing outside the driver's side door of the truck.   As MPD officers drew closer, Braxton reacted as if alarmed and jumped inside the truck and closed the door.

The officers approached Braxton and asked whether the trailer belonged to him.   He explained that he just bought it and provided them a title for the trailer.   He also provided his ID.

2

The title did not have Braxton's name on it.   Braxton agreed to step out of the car to show

Officer Willis the VIN on the trailer.   As Braxton stepped out of the car, he adjusted the area

around his waistband and hoodie pocket.   While speaking to Officer Willis, he kept the left side

of his body away from Officer Willis.   Officer Willis asked Braxton if he had any weapons.

Braxton said no, and Officer Willis moved to attempt a pat down.   In response, Braxton pulled

away, and tried to flee, resulting in a struggle in which Officer Willis fell to the ground.   As

Braxton tried to run away, he continued to grasp around his waistband.

Officers were eventually able to handcuff Braxton.   Officer Willis then tried to conduct a

pat down.   As he did so, Braxton continued to turn his body and lift his leg to stop Officer Willis

from patting down part of his body.   Officer Willis ultimately felt an object consistent with a

firearm in Braxton's waistband.   The firearm was recovered and found to be Glock 27 .40

caliber handgun loaded with one in the chamber and 12 rounds in the magazine.   The gun's

serial number had been scratched off and it was equipped with a machine gun conversion device

or giggle switch.

### *Mr. Braxton's Offenses While On Supervision*

Braxton was charged in D.C. Superior Court in relation to this offense on March 30,

2023.   On April 3, 2023, Braxton was released into Pretrial Services' High Intensity Supervision

Program.   He was fitted with a GPS device and instructed, among other things, that he was not

to possess any firearms or ammunition.   The Government has reviewed approximately two

months of location information from Mr. Braxton's GPS device.   In just those two months, Mr.

Braxton is implicated in at least seventeen different offenses.[1]

---

[1] Mr. Braxton has not yet been charged with these offenses.   The Government is reviewing

- **September 1, 2023, at approximately 3:00AM:**   Mr. Braxton's GPS device placed him at the time and location an attempted robbery of an ATM machine at Shore United Bank in Crofton, Maryland.   Surveillance footage reflected that two black males drove a truck to the ATM, attempted to pry it open using crowbars, before hooking tow straps from the truck to the ATM in an attempt to remove the cash box.   These attempts failed.

- **September 5, 2023, at approximately 12:30 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of a vehicle from East Coast Truck in Laurel, Maryland. Surveillance footage reflected that two suspects exited a dark Dodge charger and stole a white Ford Econoline E150 van.

- **September 6, 2023, at approximately 1:30 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of vehicle tires and rims from a Honda dealer in Gaithersburg, Maryland.   Surveillance footage reflected multiple suspects exiting a black Dodge charger and a Ford Econoline van and stealing the tires from nine separate vehicles.

- **September 7, 2023, at approximately 2:30 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of a white Dodge charger in College Park, Maryland.

- **September 8, 2023, at approximately 2:50 AM:**   Mr. Braxton's GPS device placed him at the time and location of the bombing of a Bank of America in Takoma Park, Maryland. Surveillance footage reflects that two men, similar in appearance and dress to the suspects in the September 1 and September 5 offenses, exited the white Dodge charger that had been stolen the night before.   The suspects pried open the outer door of the ATM and then placed an explosive device in the ATM.   The device detonated damaging the ATM, but the suspects were unable to steal anything from inside.

- **September 8, 2023, at approximately 4:00 AM:**   Mr. Braxton's GPS device placed him at the time and location of an attempted ATM theft from a CVS in Silver Spring, Maryland. The vehicles used in the attempted robbery were a stolen Ford pickup and the same stolen white Dodge charger from September 7, 2023.

- **September 12, 2023 at approximately 12:14 AM:**   Mr. Braxton's GPS device placed him at the time and location of the attempted theft of a vehicle from East Coast Truck in Laurel, Maryland.   This is the same location as the September 5, 2023 vehicle theft.

- **September 22, 2023, at approximately 1:45 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of a Mitsubishi vehicle in Mt. Rainier, Maryland.   The vehicle used to steal the Mitsubishi was the same stolen white Dodge charger from September 7, 2023.

---

these offenses to determine which of these offenses would be properly charged in D.C.   The Government is also in the process of obtaining all of Mr. Braxton's GPS records prior to September 2023.

- **September 25, 2023, at approximately 2:50 AM**:   Mr. Braxton's GPS device placed him at the time and location of the stolen white Dodge charger meeting up with the stolen Mitsubishi, and then placed him inside the stolen Dodge charger when it was used to steal a Dodge Dakota.   Local police pursued the stolen vehicle, and Mr. Braxton's device indicates that while fleeing he reached speeds of 116 miles per hour before escaping law enforcement.

- **September 29, 2023:**   Mr. Braxton's GPS device reflected that he drove to Columbus, Ohio to pick up a Hurst fireman's tool that he purchased through eBay.

- **October 4, 2023 at 1:22 AM and 3:27 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of two additional vehicles.

- **October 24, 2023, at approximately 3:00 AM**:   Mr. Braxton's GPS device placed him at the time and location of the previously bombed Bank of America in Takoma Park, Maryland when Hurst fireman's tools and a white Dodge charger were used in an attempt to break into the same ATM as on September 8, 2023.

- **October 31, 2023, at approximately 2:32 AM:**   Mr. Braxton's GPS device placed him at the time and location of the theft of tires and rims from a car dealership in Bethesda, Maryland.

- **November 5, 2023:**   Mr. Braxton's GPS device reflected that he was present inside a stolen Toyota RAV-4 while the vehicle traveled to Chantilly, Virginia, where an attempt was made to steal a Jeep.   His device then reflected that he returned to his residence before proceeding to a Dodge dealership in Hagerstown, where an attempt was made to steal a Dodge vehicle.

- **November 9, 2023, at approximately 2:00 AM:**   Mr. Braxton's GPS device reflected that he was present when a Jeep was stolen from a car dealership in Baltimore City, Maryland.   He was observed later that day in front of that stolen Jeep.

- **November 10, 2023, at approximately 3:25 AM.**   Mr. Braxton's GPS device reflected that Mr. Braxton was present at a Honda dealership in Gaithersburg, Maryland when forty-four wheels and tires were stolen from eleven vehicles. This is the same dealership as the September 6, 2023 thefts.

- **November 14, 2023, at approximately 2:30 AM.**   Mr. Braxton's GPS device reflected that he was present for the theft of tires and wheels at a Jeep dealership in Springfield, Virginia.

### *Mr. Braxton's Arrest*

Mr. Braxton was arrested at his residence on December 19, 2023.   Following his arrest, Mr. Braxton asked a law enforcement officer to get him a sweatshirt from his bedside table. Underneath the sweatshirt in the bedside table was a black Taurus PT111 G2 handgun loaded with eleven rounds in the magazine, and one round in the chamber.

### *Figure 1*



Next to the firearm was a clear plastic bag containing approximately 46 grams of a substance that appeared consistent with a controlled substance.[2]

---

[2] The suspected controlled substance has not yet been tested.

*Figure 2*



Mr. Braxton's wallet was on top of the bedside table and the drawer in which the handgun and suspected heroin were found contained multiple pieces of mail with Mr. Braxton's name on it. Outside of Mr. Braxton's residence were multiple stolen vehicles.

### *Defendant Braxton's Criminal History*

Mr. Braxton has been arrested sixty-nine times and convicted nineteen times. The following summarizes his more serious convictions:

- On January 29, 2004, Mr. Braxton was convicted of Second-Degree Assault and Motor Vehicle Theft in Prince George's County and sentenced to a five-year suspended sentence.

- On June 15, 2007, Mr. Braxton was convicted of Reckless Driving and Fleeing Law Enforcement and sentenced to 150 days' incarceration.

- On October 10, 2007, Mr. Braxton was convicted of Sexual Solicitation and sentenced to sixty days' incarceration.

- On March 14, 2008, Mr. Braxton was convicted of Assault on a Police Officer and sentenced to 180 days' incarceration.

- On January 5, 2010, Mr. Braxton was convicted of Assault on a Police Officer and sentenced to 180 days' incarceration.

- On May 28, 2009, Mr. Braxton was convicted of Threats to Do Bodily Harm and sentenced to a suspended sentence.   His probation was revoked, and he was sentenced to 180 days' incarceration.

- On February 12, 2010, Mr. Braxton was convicted of Unlawful Entry and sentenced to 15 days' incarceration.

- On June 25, 2012, Mr. Braxton was convicted of Fleeing Law Enforcement, Destruction of Property, and Leaving after Colliding and sentenced to 24 months' incarceration.

- On July 18, 2012, Mr. Braxton was convicted of two separate counts of Assault on a Police Officer and Fleeing Law Enforcement.

- On September 2, 2020, Mr. Braxton was convicted of Theft (Between $1,500 and $25,000) and Fourth Degree Burglary, and sentenced to a 5-year suspended sentence.   A probation violation hearing is scheduled for January 5, 2024.

- On September 11, 2020, Mr. Braxton was convicted of Theft (Between $1,500 and $25,000) and sentenced to a 5-year suspended sentence.   A probation violation hearing is scheduled for March 6, 2024.

- On May 19, 2021, Mr. Braxton was convicted of two counts of Simple Assault.   He was originally sentenced to probation but his probation was revoked.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a . . . 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community if Mr. Braxton were to be released.

I. __The Nature and Circumstances of these Offenses Merits Detention.__

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. Mr. Braxton is charged with a serious offense carrying significant penalties.  For violating 18 U.S.C. § 922(g), Mr. Braxton faces a maximum sentence of up to fifteen years' imprisonment.

While the defendant is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Not only was this firearm loaded, *see United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling,") but the firearm appears to have been modified to make it even deadlier.

10

The firearm was fitted with what appears to be a machinegun conversion device or "glock switch."   This device converts a semiautomatic handgun into a machinegun.   Put differently, by squeezing the trigger of this gun just once, Mr. Braxton could expel all twelve of its rounds.   These conversion devices are particularly dangerous because they are not professionally manufactured and a semi-automatic firearm is not intended to be fired automatically.   This means that someone trying to use such a firearm is likely to spray bullets indiscriminately.

And Mr. Braxton did not just possess this firearm in his home or as he sat on a street corner. Mr. Braxton possessed this firearm while engaging in a wrestling match with law enforcement. His possession of that modified firearm posed a serious risk of harm or death to himself and the law enforcement officers with whom he engaged.

But, as set forth above, Mr. Braxton's charged conduct is just the tip of the iceberg.   For at least two months, Mr. Braxton has been engaged in a crime spree.   Over the last two months it appears that Mr. Braxton's primary occupation was committing crimes.   He stole vehicles, attempted to rob ATMs, and even dabbled in the use of explosives.   While the Government has not yet charged Mr. Braxton for these offenses, Mr. Braxton is likely to face prosecution in multiple jurisdictions as a result.

Further, when Mr. Braxton was arrested, he had yet another gun in his possession, in a bedside table with mail in his name.   And the firearm was in the same drawer as a quantity of a suspected controlled substance.

The nature and circumstances of his offenses merit detention.

## II.   The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of

detention.[3]   The Government's case against Defendant Braxton is strong.

Officers responded to a 911 call reporting a man in the rear of 5026 Sheriff Road NE operating a black SUV pulling a trailer, that appeared to be involved in stealing cars.   Officers arrived and found Mr. Braxton standing next to a black SUV pulling a trailer and blocking the alley.   The moment officers arrived Mr. Braxton jumped into his vehicle.   He then provided a title for the trailer that was not in his name.   During his encounter with officers, he adjusted his waistband and kept the left side of his body unnaturally turned away from officers.   And when an officer asked him if he had any weapons, he reacted emotionally and began pulling away from the officer.   He fought with the officers until they felt what appeared to be a firearm in his waistband. Officers then searched Mr. Braxton and found the recovered firearm in his waistband.

This is not a case where DNA or other forensic evidence will be required to prove Mr. Braxton's guilty.   The firearm was recovered from his waistband.   In other words, if the officers' version of events is accurate—and it is corroborated by body-worn camera—there is no factual or legal defense to this crime.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future

---

[3] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and Mr. Braxton should be detained pretrial.

### III.   The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Braxton's history and characteristics, likewise favors detention.

Mr. Braxton has a lengthy criminal history, extending more than twenty years.   His history is fairly consistent.   Mr. Braxton steals:   not petty theft, items ranging from between $1,500 and $25,000.   Mr. Braxton assaults or threatens to harm people:   both ordinary civilians and on multiple occasions law enforcement officers.   And when Mr. Braxton is caught, he tries to flee, amassing multiple convictions for Fleeing Law Enforcement.

Mr. Braxton does not perform well on supervision.   His probation has been revoked on five separate occasions.   When he was initially charged in D.C. Superior Court for the possession of a suspected machine gun, he was on supervision in two separate matters.   And when he was released in the D.C. Superior Court matter, he engaged in a lengthy crime spree despite the fact that he was wearing a GPS ankle monitor.   Probation, incarceration, and one of the most intrusive forms of supervision—a GPS device—have done nothing to deter Mr. Braxton from engaging in this conduct.   His criminal history and particularly his performance while on supervision weighs in favor of detention.

### IV.   Mr. Braxton Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by Defendant Braxton's release, similarly weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is

13

unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Defendant Braxton possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

But his possession of this firearm was made even more dangerous by its apparent conversion into a machinegun and the reckless wrestling match Mr. Braxton engaged in with law enforcement while in possession of this firearm.   The proliferation of these type of machine gun conversion devices—which make deadly weapons even deadlier—presents a significant threat to the safety of our community.   In 2021, twenty-seven such devices were recovered.   In 2022, at least 119 were recovered.   But in 2023, at the current pace, ATF projects that at least 153 will be recovered.   That is an increase of more than 340% from 2021 to 2022, and an increase of 467% from 2021 to 2023.[4]

But the danger Mr. Braxton poses to the community is not limited to his March possession of a firearm.   He appears to have committed more than a dozen different crimes over a two-month period all while wearing a GPS device.   In that time he has stolen thousands of dollars' worth of property, attempted to steal more, and even detonated an explosive device.

Mr. Braxton's prior arrests and incarceration have done nothing to deter him from possessing firearms, fleeing law enforcement, or engaging in a host of other crimes.   Nor did the

---

[4] These are approximate and these numbers will change based on traces received from local law enforcement or updates from local law enforcement regarding previous traces submitted to ATF.

threat of significant incarceration as a result of his supervision.   Mr. Braxton is almost forty years old and does not have the excuse of youthful disobedience.   Mr. Braxton is a danger to our community and should be detained pending trial.

**CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Braxton pending trial on these charges.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052


By:          */s/ Cameron A. Tepfer*
            Cameron A. Tepfer
            D.C. Bar No. 1660476
            Assistant United States Attorney
            601 D Street NW
            Washington, D.C. 20530
            202-258-3515
            Cameron.Tepfer@usdoj.gov